IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michelle Grimes, : 
                Petitioner : 
                 : 
        v. : 
                 : 
City of Philadelphia (Workers' : 
Compensation Appeal Board), :   No. 790 C.D. 2022
              Respondent :   Submitted: February 24, 2023


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                FILED: April 26, 2023


        Michelle Grimes (Claimant) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) June 29, 2022 order affirming the WC Judge's (WCJ) decision that granted the City of Philadelphia's (Employer) Petition to Modify WC Benefits (Modification Petition). Claimant presents three issues for this Court's review: (1) whether the Board erred by affirming the WCJ's conclusion that Act 111[1] does not unconstitutionally violate Claimant's vested right to be free from the Impairment Rating Evaluation (IRE) process provided for in Section 306(a.3) of the WC Act (Act);[2] (2) whether the Board

---

[1] Act of October 24, 2018, P.L. 714, No. 111 (Act 111). Act 111 incorporated and adopted the use of the American Medical Association's "Guides to the Evaluation of Permanent Impairment," 6th edition (second printing April 2009), for performing Impairment Rating Evaluations.

[2] Act of June 2, 1915, P.L. 736, *as amended*, added by Section 1 of Act 111, 77 P.S. § 511.3. Act 111 repealed Section 306(a.2) of the Act, added by the Act of June 24, 1996, P.L. 350, *formerly* 77 P.S. § 511.2, and replaced it with Section 306(a.3) of the Act after the Pennsylvania

erred by affirming the WCJ's conclusion that Act 111 can be applied to injuries that occurred before its October 24, 2018 effective date; and (3) whether the Board erred by affirming the WCJ's conclusion that Act 111 is not an unlawful delegation of legislative authority.[3]  After review, this Court affirms.

On February 28, 2011, Claimant sustained a work-related injury to the lower part of her right leg while in the course of her employment with Employer. Employer issued an updated Notice of Compensation Payable accepting Claimant's injury as a right tibula/fibular fracture and paid her temporary total disability (TTD) benefits.

On June 20, 2017, the Pennsylvania Supreme Court decided *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 161 A.3d 827 (Pa. 2017) (*Protz II*), wherein it declared that Section 306(a.2) of the Act delegated the General Assembly lawmaking authority to the American Medical Association (AMA) in violation of article II, section 1 of the Pennsylvania Constitution,[4] and struck the provision from the Act in its entirety.

On June 8, 2021, Claimant underwent an IRE conducted by Christopher Belletieri, M.D. (Dr. Belletieri), in which Dr. Belletieri opined that Claimant had reached maximum medical improvement with regard to her work injury, and she had

---

Supreme Court declared Section 306(a.2) of the Act unconstitutional.  *See Protz v. Workers' Comp. Appeal Bd. (Derry Area Sch. Dist.)*, 161 A.3d 827 (Pa. 2017).  Section 306(a.3) of the Act is virtually identical to Section 306(a.2) of the Act and was immediately effective.

[3] Claimant presents her issues in terms of whether *the Board* erred, without reference to the WCJ's decision.  However, this Court's "review is limited to determining whether *the WCJ's* findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated."  *Pierson v. Workers' Comp. Appeal Bd. (Consol Pa. Coal Co. LLC)*, 252 A.3d 1169, 1172 n.3 (Pa. Cmwlth.), *appeal denied*, 261 A.3d 378 (Pa. 2021).  Therefore, the issues have been restated in terms of whether the Board erred by affirming the WCJ's conclusions.

[4] Article II, section 1 of the Pennsylvania Constitution specifies: "The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives."  PA. CONST. art. II, § 1.

a whole-person impairment rating of 8%, based on the AMA's "Guides to the Evaluation of Permanent Impairment," 6th edition (second printing April 2009) (6th Edition AMA Guides).

On July 21, 2021, Employer filed the Modification Petition seeking to change Claimant's disability status from total to partial based upon the June 8, 2021 IRE results. The WCJ conducted hearings on August 9 and November 4, 2021. On February 18, 2022, the WCJ granted the Modification Petition. On June 29, 2022, the Board affirmed the WCJ's decision. Claimant appealed to this Court.[5]

Initially, Section 306(a.3) of the Act declares, in pertinent part:

> (1) **When an employe has received total disability compensation** . . . **for a period of [104] weeks**, **unless otherwise agreed to**, **the employe shall be required to submit to a medical examination which shall be requested by the insurer within [60] days upon the expiration of the [104] weeks to determine the degree of impairment due to the compensable injury**, **if any**. The degree of impairment shall be determined based upon an evaluation by a physician . . . pursuant to the [6th Edition AMA Guides].
>
> (2) **If such determination results in an impairment rating that meets a threshold impairment rating that is equal to or greater than [35%] impairment under the [6th Edition AMA Guides]**, **the employe shall be presumed to be totally disabled and shall continue to receive total disability compensation benefits** . . . . **If such determination results in an impairment rating less than [35%] impairment under the [6th Edition AMA Guides]**, **the employe shall then receive partial disability benefits** . . . : Provided, however, That no reduction shall be made until [60] days' notice of modification is given.

---

[5] *See supra* note 3. Moreover, "[a]s with any challenge to the constitutionality of a statutory amendment, our scope of review is plenary and our standard of review is *de novo.*" *Konidaris v. Portnoff Law Assocs., Ltd.*, 953 A.2d 1231, 1239 (Pa. 2008).

(3) Unless otherwise adjudicated or agreed to based upon a determination of earning power . . . , the amount of compensation shall not be affected as a result of the change in disability status and shall remain the same. An insurer or employe may, at any time prior to or during the [500]-week period of partial disability, show that the employe's earning power has changed.

(4) An employe may appeal the change to partial disability at any time during the [500]-week period of partial disability[:] Provided, That there is a determination that the employe meets the threshold impairment rating that is equal to or greater than [35%] impairment under the [6th Edition AMA Guides].

(5) Total disability shall continue until it is adjudicated or agreed . . . that total disability has ceased or the employe's condition improves to an impairment rating that is less than [35%] of the degree of impairment defined under the [6th Edition AMA Guides].

(6) Upon request of the insurer, the employe shall submit to an [IRE] in accordance with the provisions of [S]ection 314 [of the Act] to determine the status of impairment: Provided, however, That for purposes of this clause, the employe shall not be required to submit to more than [2] [IREs] under this clause during a [12]-month period.

(7) In no event shall the total number of weeks of partial disability exceed [500] weeks for any injury or recurrence thereof, regardless of the changes in status in disability that may occur. In no event shall the total number of weeks of total disability exceed [104] weeks for any employe who does not meet a threshold impairment rating that is equal to or greater than [35%] impairment under the [6th Edition AMA Guides], for any injury or recurrence thereof.

77 P.S. § 511.3 (emphasis added).

Section 3 of Act 111 further provides, in relevant part:

(1) For the purposes of determining whether an employee shall submit to a medical examination to determine the degree of impairment and whether an employee has received total disability compensation for the period of

4

104 weeks under [S]ection 306(a.3)(1) of the [A]ct, **an insurer shall be given credit for weeks of total disability compensation paid prior to the effective date of this paragraph**. This section shall not be construed to alter the requirements of [S]ection 306(a.3) of the [A]ct.

(2) For the purposes of determining the total number of weeks of partial disability compensation payable under [S]ection 306(a.3)(7) of the [A]ct, **an insurer shall be given credit for weeks of partial disability compensation paid prior to the effective date of this paragraph**.

Act 111, § 3(1), (2) (emphasis added).

Claimant first argues that the Board erred by affirming the WCJ's conclusion that Act 111 does not unconstitutionally violate Claimant's vested right to be free from the IRE process provided for in Section 306(a.3) of the Act.

In *Pierson v. Workers' Compensation Appeal Board (Consol Pennsylvania Coal Co. LLC)*, 252 A.3d 1169 (Pa. Cmwlth.), *appeal denied*, 261 A.3d 378 (Pa. 2021), the claimant similarly argued "that the General Assembly cannot take away his 'vested rights[.]'" *Id*. at 1180. Relying on *Whitfield v. Workers' Compensation Appeal Board (Tenet Health System Hahnemann LLC)*, 188 A.3d 599 (Pa. Cmwlth. 2018) (*en banc*), the *Pierson* Court described that, although a WC claimant has a "certain right to benefits until such time as he is found to be ineligible for them[,]" Section 413(a) of the Act creates a "reasonable expectation[] under the Act that benefits may change." *Pierson*, 252 A.3d at 1179. The *Pierson* Court stated:

> [C]laimants, such as the one in the matter before us, did not automatically lose anything by the enactment of Act 111. Act 111 simply provided employers with the means to change a claimant's disability status from total to partial by providing the requisite medical evidence that the claimant has a whole[-]body impairment of less than 35%, after receiving 104 weeks of TTD benefits.

5

*Id.*

> Following our decision in *Pierson*, this Court has consistently held that Act 111 does not abrogate or substantially impair a claimant's vested rights in [WC] benefits because there is no right to ongoing TTD status. *See, e.g.*, *Hutchinson v. Annville Twp. (Workers' Comp. Appeal Bd.)*, 260 A.3d 360, 367 (Pa. Cmwlth. 2021)[, *appeal denied*, (Pa. No. 489 MAL 2021, filed June 7, 2022)] (relying on *Pierson* to dismiss claimant's constitutional claims against Act 111).

*DiPaolo v. UPMC Magee Women's Hosp. (Workers' Comp. Appeal Bd.)*, 278 A.3d 430, 435 (Pa. Cmwlth. 2022); *see also Harold v. Abate Irwin, Inc. (Workers' Comp. Appeal Bd.)* (Pa. Cmwlth. No. 879 C.D. 2021, filed June 13, 2022), *appeal denied*, (Pa. No. 192 WAL 2022, filed Jan. 3, 2023).[6] Moreover, because the purpose of the Remedies Clause is to ensure that "a vested right is not eliminated by subsequent legislation[,]" *Dana Holding Corp. v. Workers' Compensation Appeal Board (Smuck)*, 195 A.3d 635, 644 (Pa. Cmwlth. 2018) (*en banc*), *aff'd*, 232 A.3d 629 (Pa. 2020); *see also Konidaris v. Portnoff Law Associates, Ltd.*, 953 A.2d 1231 (Pa. 2008), where a claimant does not have a vested right in WC benefits, the Remedies Clause does not apply. *See Jaskulski v. Workers' Comp. Appeal Bd. (Weis Markets Inc.)* (Pa. Cmwlth. No. 797 C.D. 2021, filed Apr. 13, 2022), *appeal denied*, (Pa. No. 201 MAL 2022, filed Oct. 4, 2022); *see also Stoshick v. Air Prods. & Chems., Inc. (Workers' Comp. Appeal Bd.)* (Pa. Cmwlth. No. 27 C.D. 2021, filed Feb. 3, 2022), *appeal denied*, (Pa. No. 90 MAL 2022, filed Aug. 8, 2022). Because this Court has previously ruled that a WC claimant does not have a vested right to ongoing TTD benefits that Act 111 violates, Claimant's argument to the contrary is unfounded.

---

[6] Unreported decisions of this Court issued after January 15, 2008, may be cited as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a). The unreported decisions cited herein are cited for their persuasive value.

Next, Claimant contends that the Board erred by affirming the WCJ's conclusion that Act 111 can be applied to injuries that occurred before its October 24, 2018 effective date.

> This Court previously considered and rejected similar [retroactivity] contentions in *Pierson* . . . . There, . . . the claimant suggested that applying Act 111 to injuries predating its enactment would impair his vested rights. *Id.* at 1175-76. In rejecting the claimant's vested rights argument, this Court explained:
>
>> While [the c]laimant, here, argues that he has a [vested] right to benefits as calculated at the time of injury, there are reasonable expectations under the . . . Act that benefits may change. We acknowledge that a claimant retains a certain right to benefits until such time as he is found to be ineligible for them. However, claimants, such as the one in the matter before us, did not automatically lose anything by the enactment of Act 111. Act 111 simply provided employers with the means to change a claimant's disability status from total to partial by providing the requisite medical evidence that the claimant has a whole[-]body impairment of less than 35%, after receiving 104 weeks of [TTD] benefits.
>>
>> As this Court opined in *Rose Corporation* [*v. Workers' Compensation Appeal Board (Espada)*, 238 A.3d 551 (Pa. Cmwlth. 2020)], the General Assembly made it clear in Act 111 that weeks of [TTD] and partial disability paid by an employer/insurer prior to the enactment of Act 111 count as credit against an employer's new obligations under Act 111.
>>
>> . . . .
>>
>> In *Rose Corporation*, we also added: "Through the use of very careful and specific language, the General Assembly provided employers/insurers with credit for the weeks of compensation, whether total or partial in nature, previously paid." *Rose Corp.*, 238 A.3d at 562.

7

[A]s we made clear in *Rose Corporation*, the 104-week and credit provisions of Act 111 were explicitly given retroactive effect by the clear language used by the General Assembly.

[The c]laimant, herein, argues that the General Assembly . . . did not explicitly express an intent to apply the provisions of Act 111 in any sort of a retroactive fashion. . . . Further, we believe it is clear that the General Assembly intended for the 104-week and credit weeks provisions of Act 111 to be given retroactive effect, where, as we noted in *Rose Corporation*, it stated in plain language it was doing so.

*Id*. at 1180 (citation omitted). Our analysis in *Pierson* is directly applicable and controlling here.

*Hutchinson*, 260 A.3d at 366-67 (footnote omitted). Accordingly, Claimant's argument that the WCJ erred by determining that Act 111 can be applied to injuries that occurred before its October 24, 2018 effective date lacks merit.

Lastly, Claimant asserts that the Board erred by affirming the WCJ's conclusion that Act 111 is not an unlawful delegation of legislative authority.

However, in *Hutchinson*,

[the c]laimant [also] assert[ed] that Act 111 is unconstitutional because its provision for IREs pursuant to the [6th Edition AMA Guides] improperly delegates legislative authority to the AMA, a private entity. This Court has previously rejected this argument and has expressly held that Act 111 d[oes] not constitute an improper delegation of legislative authority. [*See Pa.*] *AFL-CIO* [*v. Commonwealth*], 219 A.3d [219,] 314-15 [(Pa. Cmwlth. 2019), *aff'd per curiam*, (Pa. No. 88 MAP 2019, filed Aug. 18, 2020)]; *see also Rose Corp.* . . . (by specifying the edition of the [AMA] Guides to be applied in performing IREs, the legislature cured the unconstitutional delegation that arose from the former language providing for application of the most recent edition). [The c]laimant's assertion to the contrary is without merit. As we explained in *AFL-CIO*, although the legislature may not delegate the future enactment of

8

standards, it may adopt as its own an existing set of standards, and doing so in Act 111 d[oes] not unconstitutionally delegate its legislative authority.[FN]9

*AFL-CIO*, 219 A.3d at 314-15 (quoting *Protz II*, 161 A.3d at 838-39, and citing *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth*, . . . 877 A.2d 383, 418 ([Pa.] 2005)).

> [FN]9 The flaw in former Section 306(a.2) [of the Act] was that, unlike the replacement provision of Act 111, it did not simply adopt a set of existing standards; rather, by mandating use of the most recent version of the [6th Edition AMA] Guides, it allowed the AMA to alter the standards at will without any legislative oversight.

*Hutchinson*, 260 A.3d at 366 (italics omitted). Accordingly, Claimant's argument that the WCJ erred by not concluding that Act 111 is an unconstitutional delegation of legislative authority also lacks merit.

Because the WCJ properly determined, based on precedent, that Act 111 does not unconstitutionally violate Claimant's vested rights, can be applied to injuries that occurred before its October 24, 2018 effective date, and is not an unlawful delegation of legislative authority, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michelle Grimes,                                :
               Petitioner            :
                                        :
      v.                                :
                                          :
City of Philadelphia (Workers'      :
Compensation Appeal Board),      :      No. 790 C.D. 2022
               Respondent            :

## O R D E R

AND NOW, this 26th day of April, 2023, the Workers' Compensation Appeal Board's June 29, 2022 order is affirmed.


                                    _____

                                    ANNE E. COVEY, Judge